D. O. BRINKLEY v. WILMINGTON AND WELDON RAILROAD CO.

(Decided March 6, 1900.)

*Killing Stock—Negligence—Evidence—Motion to Nonsuit, Act 1897.*

1. On a motion to nonsuit, the evidence of plaintiff must be accepted as true, and construed in the most favorable light to him, as the jury might take that view of it, if left to them.

2. If there is more than a scintilla of evidence tending to prove the plaintiff's case, it must be submitted to the jury.

3. Legal negligence is the absence of that degree of care which the law requires a man to exercise under the peculiar circumstances in which he may be placed for the time being.

4. While it is ordinarily the duty of the engineer, when an animal is on the track, to sound the alarm whistle, yet when it is apparent from the location of the track that the frightened animal can not get off, or that it would be contrary to its natural instincts to do so, and is approaching a trestle which it can not safely cross, the engineer must use his common sense, and stop the blowing and the train too.

ACTION FOR DAMAGES for negligently killing a horse, tried before *Starbuck, J.,* at Fall Term, 1899, of the Superior Court of WASHINGTON County.

At the conclusion of plaintiff's evidence the defendant moved for judgment of nonsuit, under Act of 1897. Motion overruled, defendant excepted. The defendant requested the Court to charge the jury that from all the evidence, defendant was not guilty of negligence. Refused. Exception.

The jury found that the defendant was guilty of negligence and assessed the plaintiff's damages at $35. Judgment accordingly. Appeal by defendant.

The evidence, and charge of the Court, excepted to, are recapitulated in the opinion.

*Mr. A. O. Gaylord,* for appellant.
*Mr. H. S. Ward,* for appellee.

DOUGLAS, J. This is a civil action for damages on account of the alleged negligent killing of the plaintiff's horse. The following is the evidence for the plaintiff as taken from the record:

Abner Sawyer, for the plaintiff, testified:

"I was in plaintiff's field through which the railroad runs on the day and at the time the horse was killed, and saw the horse and the train; between 12 and 1 o'clock p. m.; it was the freight train coming into town; train was behind time— was due at noon. The horse was on the track which was through the field, and was 100 yards ahead of the train when I first saw it. My attention was attracted by blowing of whistle; I looked, the train was running at its usual speed, the horse was running ahead of train about 100 yards; horse was running along road-bed at the ends of the cross-ties. He ran along ends of ties till about fifteen yards from a little trestle which spans a ditch, when he jumped on the track and ran on the trestle. His leg went through and was broken above the

knee. Horse pulled himself up, got over trestle and off the track. From where I first saw horse running along ends of ties, it was 200 yards to trestle; when horse fell through trestle he was still 100 yards ahead of train; along that part of track where horse was running there was a ditch on each side of the road-bed, and a bank outside the ditch; ditch was two feet deep and the bank a foot above the ditch—not room enough between the end of ties and ditch for a horse to turn around; horse could not have gotten off of right-of-way without jumping the ditch and bank. Near the trestle the ditch bends across the right-of-way and passes under the trestle. This ditch near the trestle was 12 feet wide and 6 feet deep. Between this ditch and the road-bed it is marshy. Horse could not have gotten off the road-bed near trestle on account of the marsh and the ditch. The road-bed on which horse was running is lower than the field—two or three feet. The train kept blowing its whistle. When the horse got to where ditch bends in towards trestle he jumped upon the track; when horse fell through, train slowed down some, and stopped a few steps before reaching trestle; the horse got off trestle about when the train stopped. The railroad runs straight through field. Where I first saw horse the ditch is two feet wide; it gets wider as it approaches trestle. Road-bed is in good condition."

D. O. Brinkley, the plaintiff, testified that the horse was ruined—worth $35. Ties on the trestle were 18 inches apart.

Defendant moved for judgment of nonsuit under Act of 1897. Motion overruled. Defendant excepted.

The defendant then introduced evidence which it is not necessary for us to consider. The record further states as follows:

Defendant, in apt time, requested the Court to charge the

jury that, from all the evidence, defendant was not guilty of negligence, and they should answer the first issue, No.
. Refused.   Exception.

(Second exception.)

The Court charged, among other things: If, when the horse began running along the road-bed, the engineer had reason to believe from the surroundings that the horse would probably run upon the trestle unless he should stop the train as soon as he reasonably could, and that by at once beginning to do so, he could stop the train at such a distance from the trestle that the horse would probably not run upon it, then it was his duty to stop the train as soon as he reasonably could, and if he failed to do so he was negligent; and if by stopping the train as soon as it could be reasonably done, the injury would probably have been avoided, then this negligence was the cause of the injury, and the issue should be answered, Yes.

To this instruction defendant excepted.

The Court charged that upon no view of the evidence, other than that above set out, could defendant be found guilty of negligence, and that the burden was on plaintiff to prove the foregoing state of facts.

Verdict for plaintiff.

On a motion for nonsuit the evidence for the plaintiff must be accepted as true, and construed in the light most favorable to him, as the jury might take that view of it if left to them, as in the case at bar they appear to have done.   *Cox v. Railroad,* 123 N. C., 604; *Dunn v. Railroad,* 124 N. C., 252; *Powell v. Railway,* 125 N. C., 370.

It is equally well settled, that, if, when so construed, there is more than a mere scintilla of evidence tending to prove the plaintiff's contention, it must be submitted to the jury, who

alone can pass upon the weight of the evidence. *Spruill v. Insurance Co.,* 120 N. C., 141; *Cogdell v. Railroad,* 124 N. C., 302; *Cowles v. McNeill,* 125 N. C., 385.

We think there was sufficient evidence to be submitted to the jury. The only remaining exception is to the charge of his Honor as given above, and in that we see no error. There is not, and in the very nature of things there can not be, any fixed rule as to when an engineer shall blow his whistle. Ordinarily it is his duty to give warning, but having done so, we can not say that he must keep on blowing, regardless of consequences. The engineer is supposed to know the track, and if it is apparent that the horse can not get off, or that it would be contrary to his natural instincts to do so, it is evident that continued blowing would merely increase the danger. This is especially so when there is an open trestle ahead upon which the horse would naturally run in his fright, and across which he could not safely go. In such cases the engineer must use his common sense, and act like a man of ordinary prudence would under similar circumstances. Legal negligence is the absence of that degree of care which the law requires a man to exercise under the peculiar circumstances in which he may be placed for the time being. It is nearly always a mixed question of law and fact peculiarly within the comprehension as well as the province of the jury. We are not inadvertent to those cases in which it is held that the engineer has a right to presume that a man upon the track in his right senses will get off upon being warned of the approaching train; and it may be asked whether the law requires a greater degree of care for the protection of a brute. The law makes no such comparison, but it presumes that a human being has human intelligence, in the absence of any evidence to the contrary, and it knows that his physical char-

acteristics, guided by that intelligence, will enable a man to extricate himself from dangerous situations in which a horse or cow would be helpless.    But if a man is discovered in such circumstances of danger that he can not reasonably be expected to get off, then the engineer must stop in time. *McLamb v. Railroad,* 122 N. C., 862.    While our attention has not been called to any case in which the facts are identical with those now before us, we think the principle is decided in *Snowden v. Railroad,* 95 N. C., 93, where a frightened horse fell into a cattle guard.

The judgment is
Affirmed.