MEEKINS v. NORFOLK AND SOUTHERN RAILROAD CO.

(October 16, 1900.)

*Evidence—Sufficiency—Master and Servant—Personal Injuries—Damages—Nonsuit—Trial.*

> Evidence in this case held insufficient to be submitted to the jury on the question whether the employer negligently caused the death of its employe.

*Douglas and Clark,* JJ., dissent.

CIVIL ACTION by J. C. Meekins, administrator of John Jones, against the Norfolk and Southern Railway, heard by Judge *A. L. Coble,* at Spring Term, 1900, of TYRRELL Superior Court. From judgment of nonsuit, the plaintiff appealed.

The plaintiff introduced Eliza Jones, who testified the plaintiff's intestate was her husband. That he died June 1,

1898. He was about forty years of age. They would have been married 24 years last March. He was fireman on steamer "Mary E. Roberts," which was operated by the defendant company connecting its road from Edenton to Mackey's Ferry. He had been on the boat for a long time. He received $25.00 per month and board and place to sleep until the railroad cut the salaries of its employes and then he erceived $22.00 per month instead of $25.00. That he would send her every month for her and the family $10, $15, $20 and sometimes all of his salary. He took good care of his family. He stayed at his work regularly. He got hurt in March, 1898.

On cross-examination, she said he had some cough after he returned from the hospital in Baltimore, where he carried her for treatment. It did not hinder him from his work.

Henry Whedbee introduced for plaintiff, testified that he was on the boat the day John Jones got hurt, saw him five or ten minutes before he got hurt. He was standing on a plank, which reached across the boat in the engine-room. He was reaching up after something. The plank was in the boiler-room, where he was found. It was admitted by the defendant that the plank was placed, when in its usual place, for the fireman to walk on from one side of the boat to the other. The boat was about half way between Edenton and Mackey's Ferry when said Jones was injured. He was in the engine-room, the place he belonged. The witness went on the upper deck, and in four or five minutes news came that John Jones had fallen. He then went down to the engine-room and Jones was lying in the Chief's room. The Chief was binding up the leg of the deceased. The deceased said to witness that the plank you saw me standing upon slipped and he fell. Don't think the plank was fastened. Have seen others walk across this plank. He was fireman on the boat.

On cross-examination, witness said he used to cross on this boat about twice a week. Each end of the plank was in middle of door on each side of the boat. That he has seen the plank at a different place near the boiler. The plank was in the door over the steps. The place he usually saw it was near the boiler. It generally stayed in jambs and when it stayed in the jambs it could not slip. It seemed as he had put the plank out to reach up for something. This day the plank was not in the jambs at all. Usually it stayed in the jambs and a portion of it in the door. When in its usual place there was nothing to keep it from being pulled out in the door in the position it was in that morning. When the plank was in the usual place it could not slip endwise and it would not hardly slip sideways unless some one pulled it out. It was a loose plank.

J. C. Meekins introduced, testified he saw the plank a great many times; he never noticed plank enough to tell as to whether it would slip backward or forward. Saw nothing to keep it from slipping back and forward. That he is the administrator.

Dr. Ab. Alexander introduced and testified he knew deceased from childhood. He has seen the plank and does not think plank was fastened as to moving sideways. The large portion of plank was in front of the doors. He saw the deceased after his injury and would say the cause of his death was Bright's disease of the kidneys. Thinks the Bright's disease was caused by the fall. This fall shortened his life. His leg was broken and back hurt by the fall. The injury was the cause of the Bright's disease.

On cross-examination, he said that deceased had a cough and may have had some latent disease of the lungs. The deceased told witness that he was standing upon the board that was above the fire-room. That he was reaching above his

head and the board slipped and he fell, falling on his back and breaking his leg. That they took him out of the engineroom and told him his leg was broken; that he was taken to Dr. Dillard, who attended him for the fractured leg and injuries received, and he had not been free from since.

The witness said on cross-examination that this was same plank spoken of over the fire-room.

Plaintiff rested. The defendant moved for judgment as of nonsuit under acts of 1897 and 1899. Motion sustained and plaintiff excepted.

*Holton & Alexander and E. F. Aydlett,* for plaintiff.
*Pruden & Pruden and Shepherd & Shepherd,* for defendant.

MONTGOMERY, J. This action was brought by the administrator to recover damages for the death of his intestate, alleged to have taken place through the negligence of the defendant. The alleged negligence was that the defendant failed to provide for the deceased an appliance to be used over the hold of the boat for the use and convenience of the employes in passing from one side to the other, in the nature of a gang-plank, that was safe and suitable; the one in use having been alleged to have been made of unsound material, and not fastened and secured at its ends in jambs, so as to prevent its slipping and giving way. After the plaintiff had produced his evidence and rested his case, the defendant moved for judgment as of nonsuit, under chap. 109 of the Acts of 1897; and, upon the motion having been allowed, the plaintiff excepted and appealed. It therefore becomes necessary for us to consider and to decide whether the plaintiff's evidence, in a just and reasonable view of it, was sufficient to warrant the jury in finding the issue as to the defendant's neg-

ligence in the plaintiff's favor.   If there was more than a
scintilla offered on that issue by the plaintiff, the matter ought
to have been submitted to the jury, and there was error in the
ruling of the Court below.   If there was no fit evidence of-
fered by the plaintiff to be submitted to the jury, then his
Honor was correct in allowing the motion.

The defendant railroad company owned and operated a
steamboat as a transfer boat between Edenton, N. C., and
Mackey's Ferry; and the plaintiff's intestate was engaged in
the service of the defendant, as fireman on the boat, at the
time he received the injury which resulted in his death.
Four witnesses were introduced and examined by the plain-
tiff,—Eliza Jones, widow of the intestate; Henry Whedbee,
who was aboard the steamer the day of the accident, and who
saw the intestate just before and just after he was hurt; the
plaintiff; and Dr. Alexander, who saw the intestate after he
was hurt.   The evidence of the widow and the two last-named
witnesses is immaterial on the question of the defendant's
negligence. Whedbee testified on his examination-in-chief, in
substance, that he saw the intestate, five or ten minutes before
he got hurt, standing on a plank which reached across the boat
in the engine-room, and that he was reaching up after some-
thing; that the intestate was in the engine-room, where he be-
longed; that in a few minutes he heard that the intestate had
fallen, and immediately went to where he was; that the in-
jured man said to the witness that the plank the witness saw
the intestate standing upon slipped, and he fell; that the
plank was not fastened.   On his cross-examination the wit-
ness said that he used to cross on this boat about twice a
week.   Each end of the plank was in the middle of a door on
each side of the boat and he had seen the plank
at a different place, near the boiler.   The plank was
in the door, over the steps.   The place he usually saw it was

near the boiler. "It generally stayed in jambs, and when it stayed in the jambs it could not slip. It seems that he had put the plank out to reach up for something. This day the plank was not in the jambs at all. Usually it stayed in the jambs, and a portion of it in the door. When it was in its usual place there was nothing to keep it from being pulled out in the door, in the position it was in that morning. When the plank was in the usual place, it could not slip endwise, and it would not hardly slip sideways unless some one pulled it out. It was a loose plank." We are of the opinion that the evidence was not sufficient in a just and reasonable view of it, to warrant the jury in finding the issue of negligence in favor of the plaintiff. The plank was sound, and it, or another like it, had been used for some time for the purposes alleged in the complaint; and the plaintiff's intestate had been employed a long time, as his widow testified. There was no allegation in the complaint that such a plank, if it had been sound and well secured at the ends, would not have been a proper and safe appliance for the purposes for which it was used. Jambs were prepared to receive the plank, and it generally stayed in jambs, and when it stayed in the jambs it could not slip. It seems from the evidence, therefore, that the defendant furnished the proper appliances to enable the employes of the boat to pass safely over the hold, but that the plaintiff's intestate misused them. The witness, Whedbee, said, "It seemed he (intestate) put the plank out to reach up for something." If any other person, however, than the intestate, had moved the plank from the jambs, the intestate would have used it in its misplaced position at his peril, under the facts in this case. The doctrine of the assumption of risk does not arise in this case; for, so far as the evidence discloses, the defendant furnished proper appliances for the plaintiff's

intestate to do his work with safety.    The trouble was that he did not use them as he should have done.

No error.

DOUGLAS, J.    I can not concur either in the opinion or the judgment of the Court, as I think there was sufficient evidence (that is, more than a scintilla,) tending to prove the negligence of the defendant.    This being so, the case should have been submitted to the jury, who alone can determine the weight of the evidence and the existence of the facts.    It may be that the jury would have found for the defendant, and I would probably have done so had I been in their place; but I was not on the jury, and as a judge I have no right to usurp their functions.    I would not feel justified in killing a man simply because I might think that he would eventually be hung.    In fact, a nonsuit always looked to me to be somewhat in the nature of judicial lynching, resorted to by the Court when the orderly process of law, though amply sufficient, seemed too slow to meet the ends of justice.    The Supreme Court of Georgia has characterized a nonsuit as a purely mechanical operation, not rising to the dignity of a mental process.    It says in *Vickers v. Railroad Co.,* 64 Ga., 300:    "Nonsuit is a process of legal mechanics. The case is chopped off.    Only in a clear, gross case is this mechanical treatment proper.    When there is any doubt, another method is to be used—a method involving a sort of mental chemistry; and the chemists of the law are the jury. They are supposed to be able to examine every molecule of the evidence, and to feel every shock and tremor of its probative force."    I believe it is still the law in this State that on a motion for nonsuit the evidence must be taken in the light most favorable for the plaintiff.    *Spruill v. Insurance Co.,* 120 N. C., 141; *Collins v. Swanson,* 121 N. C., 67; *Cable v.*

*Railway Co.,* 122 N. C., 892; *Cox v. Railroad Co.,* 123 N. C., 604; *Cogdell v. Railroad Co.,* 124 N. C., 302; *Gates v. Max,* 125 N. C., 139; *Brinkley v. Railroad Co.,* 126 N. C., 88. This rule is clearly laid down by Justice FURCHES in delivering the opinion of the Court in *Johnson v. Railway Co.,* 122 N. C., 955, as follows: "In cases of demurrer and motions to dismiss under the Act of 1897, the evidence must be taken most strongly against the defendant. Every fact that it reasonably tends to prove must be taken as proved, as the jury might so find." Let us apply this rule to the case at bar. The evidence, taken in the light most favorable to the plaintiff, might well justify the following findings: That the plaintiff's intestate was using a plank furnished by the defendant for his use, and was hurt while using it for some purpose necessary to the proper performance of his duties, and, while so using it in a manner not palpably dangerous, was hurt by its sudden slipping; that, while the plank was 'generally' kept in the jambs, it was not always kept there, and was occasionally or frequently taken out, with the consent or direction of the defendant, to be used in the same manner in which the plaintiff was hurt. In fact, it may be that the intestate was so using it when he was hurt. There is no evidence whatever of the fact, assumed by the Court, that the intestate himself had moved the plank. It is true, one witness says that "it seemed he put the plank out to reach for something;" but this is evidently a mere expression of opinion on the part of the witness, who does not pretend to have seen the intestate move the plank. It may well have been that the plank was moved by the captain of the boat, or some one under his direct instructions and supervision. If that were so, could not the plaintiff recover? It may be said that I am assuming something not shown in the evidence. That is true, but the assumption of the Court that the intestate himself

moved the plank is equally without evidence.   If we attempt
to account·for the moving of the plank by mere assumption,
we must, on a motion for nonsuit, assume the theory most
favorable to the plaintiff.   This is not unjust to the defend-
ant, because by his motion he deprives the plaintiff of his
right to a trial by jury..  If the defendant wants his evi-
dence weighed in equal scales, let him leave it to the jury,
who alone can do it.   The plaintiff's intestate and the cap-
tain were not fellow servants, and, even if they had been, it
would have made no difference, under the Act of 1897..  The
fact that the plank was not fastened in the jambs was some
evidence tending to prove that other methods of use were
contemplated.   The master is bound to furnish safe ap-
pliances for the use of his servants, and these appliances must
be safe under all conditions of probable use.   The Court, in
its opinion, says that the defendant furnished proper ap-
pliances, but that the plaintiff's intestate misused them.  Here
are two affirmative findings of fact, both of which are arrived
at by construing the evidence in the light most favorable to the
defendant.   The Court again says that "if any other person,
however, than the intestate, had moved the plank from the
jambs, the intestate would have used it in its misplaced posi-
tion at his peril."   This can not be the law.   Suppose the
captain or some other duly authorized agent of the defend-
ant had used it, and it had become necessary for the intestate
to use it in the performance of his regular duties; he could
surely have recovered, unless the danger was so obvious .that
no prudent man would have run the risk.   But this of itself
would have involved the question of assumption of risk, which
the Court itself says does not arise in the case.   In any event,
would not that have been a question for the jury ?   If the
Court means to base its opinion on the ground that there was
no evidence tending to prove negligence on the part of the

defendant, I must still respectfully dissent.   It seems to me that the mere fact of the accident happening to the intestate while using a plank admittedly provided by the defendant for his use is some evidence of negligence.   It was so held as far back as the leading case of *Stokes v. Saltonstall,* 13 Pet., 181.   The syllabus says:   "The facts that the carriage was upset, and the plaintiff's wife injured, are *prima facie* evidence that there was carelessness or negligence or want of skill on the part of the driver, and throw upon the defendant the burden of proving that the accident was not occasioned by th edrivers' fault."   In the recent case of *Hogan v. Railway Co.,* 149 N. Y., the Court says: "This being so, it is further assumed that buildings, bridges, and other structures properly constructed do not ordinarily fall upon the wayfarer.   So, also, if anything falls from them upon a person lawfully passing along the street or highway, the accident is *prima facie* evidence of negligence, or, in other words, the presumption of negligence arises."   In this latter case the Court below directed a verdict for the plaintiff, and this direction was sustained by the Court of Appeals.   I must confess that I am not partial to nonsuits, and I may be mistaken in my view of the law, as may have been the great judges whose opinions I follow; but, such being my sincere convictions, I must give them effect so far as in me lies.

CLARK, J., concurs in dissenting opinion.