### HORD v. SOUTHERN RAILWAY.

(Filed December 10, 1901.)

1. EVIDENCE—*Railroads—Negligence—Walkway.*

   Evidence that people walk along a railroad track at 11 o'clock at night is competent on the question of negligence of a person killed while on the track.

2. CONTRIBUTORY NEGLIGENCE — *Negligence — Instructions — Form of—Burden of Proof.*

   An instruction that the intestate was negligent in being on a railroad track and not getting off, unless it is found that he was in a helpless condition, is correct, and the burden of showing such helplessness by a preponderance of evidence is on the person alleging it.

3. NONSUIT—*Evidence—Sufficiency—Negligence—Personal Injuries.*

   There is sufficient evidence in this case as to negligent killing of intestate by railroad to be submitted to the jury.

Cook, J., dissenting.

ACTION by J. G. Hord, administrator of John Ramsay, against the Southern Railway Company, heard by Judge *H. R. Starbuck* and a jury, at May Term, 1901, of the Superior Court of GASTON County. From a judgment for the plaintiff, the defendant appealed.

*A. G. Mangum,* for the plaintiff.

*Geo. F. Bason,* and *A. B. Andrews, Jr.,* for the defendant.

20——129

FURCHES, C. J.    This is an action for damages upon the allegation that the plaintiff's intestate was killed by the negligence of the defendant.    The intestate was seen between 8 and 9 o'clock the night he was killed, in a drunken condition, lying on the ground near the defendant's railroad track, asleep.    He was aroused from his sleep by some friends, who helped him up and upon his feet.    These friends started him home, which was only a few hundred yards off, and went with him a part of the way, which was down the track of the railroad; and would have gone with him all the way home, but he objected, saying that he could take care of himself. This was near the corporate boundary line of the town of Kings Mountain, and the next morning he was found dead a short distance outside of the corporate limits.    When found, he was lying lengthwise with the track of the road, on the end of the cross-ties outside of the rail, with the top of his head crushed, a hole torn in his jaw, his arm crushed above the elbow and severed from the body, except a little piece of skin, with grease on his hair, face and clothing.    No one saw him killed so far as the evidence showed.

It was in evidence that the passenger train of the defendant passed over that road shortly after 11 o'clock the night the intestate was killed, going south and running at the rate of about 30 miles an hour.    There was evidence that there were two crossings, one some fifty yards before reaching the place where the intestate was killed, and the other some three hundred yards further on.    There was evidence tending to show that the whistle was not sounded, and that a man on the track where the intestate was killed could have been seen for two hundred and fifty yards, by reason of the headlight of the engine, if there had been a proper lookout.

There are but three exceptions: one is as to evidence, as follows: "Question—Do people walk along the track at that time?"    This question was allowed over the objection of the

defendant, and defendant excepted, and was answered as follows: "Yes, sir; they walk there every day, the people from the mill." We can not sustain this exception. *McCall v. Railroad,* at this term.

The next exception is as follows: "(a) Inasmuch as it appears that the intestate was negligent, I charge you to answer the second issue 'Yes,' unless you find that he was in a helpless condition, and the burden is on the plaintiff to satisfy you by a preponderance of the evidence that his intestate was in a helpless condition; but if you are so satisfied, you will answer the second issue 'No' (b)."

The usual charge is, "If he is in an apparently helpless condition." But as the burden of showing this fact was upon the plaintiff, we do not see that the defendant has cause to complain—supposing there may be a shade of difference between them, and, if there is not, the charge of the Court is sustained by *McCall v. Railroad,* at this term, and authorities there cited. *Brinkley v. Railroad,* 126 N. C., 88.

The next exception is to the refusal of the Court to nonsuit the plaintiff at the close of the evidence; and this exception is grounded principally, as we understand, upon the fact that as the intestate was not found upon the track, it could not be presumed that he was killed by the defendant's train; and, further, as he was not found on the track of the road, it could not be inferred or presumed from the fact that he was killed, that the engineer was negligent in not seeing him and stopping the train. But this exception seems to be answered and the Court sustained by *Powell v. Railroad,* 125 N. C., 370, and *Cox v. Railroad,* 123 N. C., 604, and other cases.

Affirmed.

COOK, J., dissenting. Plaintiff's intestate was found, soon in the morning, dead, lying upon the cross-ties near the rail

of the defendant company's track, with a wound on his jaw,
marks on his face, a hole in his head (where his skull had
been broken in) "bigger than a hen egg, * * * his arm cut
off right at the elbow, with oil on his coat, in his hair and
on his face." During the night before he was found near
the railroad track by some friends, in a drunken condition,
and they started him on his way home, a short distance away.
He was lying when found, next morning, not at or near a
public crossing, but was 50 yards from the nearest and 300 or
400 yards from the next nearest public crossing, that is, he
was between them. There is *no evidence* showing how, by
whom or what, why, or under what circumstances he was
killed; his condition and position were the only circumstances
from which the jury could infer that he was killed by de-
fendant company's train.

Assuming that the jury were justified in finding that he
was killed by one of the trains passing during that night, then
we are confronted with the proposition: Is negligence pre-
sumed from the mere fact that a man is killed by a train, at
a point on the railroad where the public have no right in
common with the railroad company? If so, the demands
for rapid travel and speedy carriage of freight, pressed upon
railroad companies by the necessities and requirements of
this progressive age and a constantly increasing commerce,
must be denied in deference to the trespasser or drunkard
who may choose to appropriate to his own use the right-of-
way rightfully owned by another, to the annoyance, hin-
drance and damage of those who have paid a valuable consid-
tration for the passage of themselves and carriage of their
freight over the same in a stated length of time, as regulated
by the schedules? Why license and demand rapid transit,
and then punish it with a presumption if it is obeyed? The
presumption of law is that the exercise of a right or duty is
rightfully and lawfully done, and the contrary must be shown.

The engineer of a train is entitled—has a right—to presume that the track is clear, and, except at public crossings, or such places where others have a right in common, his chief concern is to look out for obstructions or defects in the road, in defense and protection of his passengers and cargo, and not for the safety of those who deem their bodies and lives of so little value as to wilfully and wantonly thrust them in dangerous places and perilous conditions. Why should the law impose a *special* duty upon railroad companies to maintain a lookout with the view of promoting the safety of such persons? If the engineer discovers such a person *on* the track in an apparently helpless condition, *then* it is his duty to use every available means, consistent with the safety of his passengers, to prevent injury to him.

In *Murch v. Weston, etc., Ry. Co.,* 85 Hun., 601, deceased was in an intoxicated condition, wandered upon the defendant's track in the city of Rochester, and fell or voluntarily laid down upon the track and went to sleep, and was run over and killed by one of the passing trains in the afternoon. When the train was within 400 or 500 feet, the brakeman upon the engine discovered an object upon the track, but was not able to determine what it was. He called the engineer's attention to it, and he was not able to distinguish what it was, until the engine was within 200 or 250 feet, when he discovered that the object was a man. He immediately reversed his engine, gave the signal to apply the brakes, and did all he could to stop the train before reaching him, but failed. The Court held that it was not the duty of the engineer to slow up or stop his train before he became aware that the object upon the track was a human being. He had the right to assume in the first instance that if it was a man he would leave the track.

In *Smith v. Fordyce* (Supreme Court of Texas), 18 S. W. Rep., 663, where the evidence showed that deceased, while

intoxicated, trespassed upon the railroad track in the night, sat down beside the track and fell asleep, and was struck and killed by a passing train, the Court held that the railroad company would not be liable unless its servants, *after* seeing his peril, took no steps to avoid the accident, and if they did not see him in time to avoid the accident, the railroad would not be liable.

In *Sullivan v. St. Louis Ry. Co.* (Court of Civil Appeals of Texas), 36 S. W. Rep., 1020, 1022, plaintiff's pleadings alleged that deceased, when killed, was lying on defendant's track asleep and unconscious, in a helpless condition, being in a state of intoxication. The Court held that deceased, being on the track in such a condition, was negligent, and, in order to fix liability on defendant, it was necessary to *show* that its servants saw deceased on the track in time to have avoided his death, and their failure then to use proper care to prevent it.

In this case, there is no evidence to show that he was *on* the track, in any position, whether standing, walking, running, lying down, or otherwise. Nor is there any evidence that he was seen by, or could have been seen and recognized as a man, by the engineer, had he been keeping a vigilant lookout; or, if he got on the track in front of the engine, there is no evidence to show whether he was on it when the engine came in sight, or got on it just as it came near him, or attempted to do so and was injured in the attempt. From the condition in which he was found, the natural inference is that he was not *on* the track, or otherwise his body would have shown greater mutilation; or, should he have been lying upon or near the track in such a way that the engineer might have seen the object and taken it to be a bundle of paper, rubbish or coat (as was the case in *N. Y., etc., R. Co. v. Kelly,* 93 Fed. Rep., 745), then it would not have been his duty to stop the train. Any of these conditions may or may not have

existed, and, in the absence of any evidence, it can not be sound law to presume negligence and cast the burden of proof upon the party who, in all other business enterprises, is presumed to be innocent; nor is it tenable to substitute suspicion for evidence. For, it is held that "there is no presumption in this State of negligence against railroad companies upon simple proof of injuries or death caused by their trains" (*Upton v. R. Co.,* 128 N. C., 173, on page 176), which I conceive to be the true and sound doctrine, and to which I shall strictly adhere. Then, applying this rule in this case, the record failing to show any evidence establishing negligence, his Honor should have sustained the motion to nonsuit the plaintiff.