## WESTERN UNION TELEGRAPH CO. v. CATLETT.

(Circuit Court of Appeals, Fourth Circuit.   February 25, 1910.)

### No. 915.

1. DEATH (§ 14*)—WRONGFUL DEATH—WANTONNESS.

It is immaterial for the purpose of establishing a cause of action for wrongful death, authorized by Revisal N. C. 1905, § 59, whether the act causing the death was wanton or cruel; it being sufficient that it was merely negligent.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 16; Dec. Dig. § 14.*]

2. NEGLIGENCE (§ 13*)—DEGREES OF NEGLIGENCE.

While the law imposes different degrees of care based on relations existing between the parties, an injury resulting from a failure to observe such degree of care constitutes actionable negligence, regardless of the degree of such negligence; degrees of negligence being important only as fixing the character or quantum of damages to be awarded.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 15; Dec. Dig. § 13.*]

3. NEGLIGENCE (§ 112*)—WILLFUL INJURY.

An allegation that the act causing intestate's death was recklessly, carelessly, wantonly, and cruelly done did not charge a willful injury, but amounted only to an allegation of simple negligence; the word "wanton" not being the equivalent of "willful."

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 185; Dec. Dig. § 112.*]

4. MASTER AND SERVANT (§ 306*) — INJURIES TO SERVANT — WILLFUL MISCONDUCT.

A master is liable for the willful misconduct of his servant within the scope of his employment.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1230-1232; Dec. Dig. § 306.*]

5. DEATH (§ 93*)—WRONGFUL DEATH—DAMAGES.

Under Revisal N. C. 1905, § 60, authorizing a recovery for wrongful death of a fair and just compensation for the pecuniary injury resulting therefrom, no punitive or exemplary damages can be recovered.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 98; Dec. Dig. § 93.*

Punitive damages in actions for wrongful death, see note to McGhee v. McCarley, 44 C. C. A. 259.]

6. NEGLIGENCE (§ 136*)—TRIAL—QUESTION FOR COURT OR JURY.

When a given state of facts are such that reasonable men may fairly differ on the question whether there was negligence or not, the matter is for the determination of the jury, but, when the facts are such that all reasonable men must draw the same conclusion, the question may be determined by a court as one of law.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

7. NEGLIGENCE (§ 1*)—DEFINITION.

"Negligence" is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such person under the existing circumstances would not have done.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 1; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 5, pp. 4743–4763; vol. 8, pp. 7729–7731.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

8. MASTER AND SERVANT (§ 304*)—INJURIES TO THIRD PERSON—NEGLIGENCE.

　　Decedent, a railroad track foreman, while standing with his crew some distance from the track during the passage of a train, was struck and killed by a telegraph cross-arm weighing 25 pounds thrown from the train by defendant's servant without looking or without being able to see that decedent or some other person might be struck thereby. Decedent was in charge of a section of the road six miles long, and was daily at some point thereon with his crew in the discharge of his duty. *Held*, that defendant's servant was negligent as a matter of law.

　　[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 304.*]

9. NEGLIGENCE (§ 1*)—ANTICIPATION OF DANGER.

　　Anticipation of danger is an element of actionable negligence only when the character of the act is doubtful, it being of no moment whether the negligent actor could have reasonably anticipated the presence of the person injured at the time and place if the conditions are such as to impose a duty in respect to the public which was not complied with.

　　[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 1; Dec. Dig. § 1.*]

In Error to the Circuit Court of the United States for the Western District of North Carolina, at Greensboro.

Action by Lillie M. Catlett, administratrix of T. W. S. Catlett, deceased, against the Western Union Telegraph Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Defendant in error, hereinafter called the plaintiff, sued plaintiff in error, hereinafter called defendant, in the superior court of Forsyth county to recover damages incurred by the death of her intestate alleged to have been caused by the negligence of defendant's servant. The cause upon defendant's petition was removed into the Circuit Court of the United States for the Western District of North Carolina. Plaintiff alleged that on the 12th day of October, 1906, her intestate was in the employment of the Southern Railway Company as a section master, and while in the performance of his duties near Reidsville, N. C., on the main line of said railway, working on the track of said road, when a train approached running north; that said intestate and his hands were standing near the track in a group in full view, and as the train passed the defendant Samuel Burton, who was at the time in the employment of the Western Union Telegraph Company and whose duty it was to throw off at certain points along the track cross-arms to be used by said telegraph company; that as the said train turned the point where plaintiff's intestate was standing as aforesaid, and in full view of said agent and servant of said telegraph company, said Burton threw from the car on which he was riding a large wooden cross-arm, weighing 25 pounds or more, upon plaintiff's intestate, killing him instantly; that the said Burton by the exercise of reasonable care and caution would have avoided the killing of plaintiff's intestate; that just before throwing the cross-arm he looked at the group of men, and knew where they were, but recklessly, carelessly, wantonly, and cruelly hurled the pieces of heavy timber upon plaintiff's intestate, killing him instantly.

Defendant, answering, admitted allegation first and allegation second, "save that it is denied that plaintiff's intestate and his hands were in view of the defendant's servant Burton as the train approached and passed." With the same exception, allegation 3 was admitted. Allegations 4 and 5 were denied. Upon the call of the case for trial, plaintiff's counsel tendered the following issues: "(1) Was the plaintiff's intestate's death caused by the negligence of the defendant? (2) What damage, if any, is the plaintiff entitled to recover?" In apt time the defendant's counsel objected to the first issue proposed by plaintiff, on the ground that it does not follow the allegation of the complaint, in that the words "wantonly, carelessly and recklessly" are omitted from the issue. The court overruled the objection of defendant's counsel to the issue, on the ground that the words "wantonly, carelessly, and recklessly" are unnecessary in the complaint, the complaint sufficiently charging the death as a

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

result of the defendant's negligence, whereupon defendant's counsel excepted.

Plaintiff introduced Weyman Spencer, who testified that he was employed by the Southern Railway Company as a section hand, and that plaintiff's intestate was his section master; that witness was with him when he was killed. He said: "We were working down the railroad track, and Capt. Catlett stopped when he saw the train coming, and told one of the men to step back down the hill and get a lining bar. He stepped off five feet from the track. I was right behind him. I was a little closer to the train than he was, and I reckon he was looking at the engine, or something. He was not looking down the track the way I was, and I saw the timber come poking out of the car about three feet, and, before I could speak, the fellow had thrown the timber out and it struck him right across his breast and broke his neck. He died right off. Train going north about 8 o'clock in the morning. We were surfacing the track. We worked there about 10 hours every day for nearly a week—had six hands—didn't have anything on the track—ground about level with the track. The baggage car door was open. There was nothing to prevent man from seeing us—open space. The piece of timber was about eight feet long—two pieces nailed together—used for cross-arms on telegraph posts. The section upon which we worked was six miles long. The hands are likely to be at any point on the track. They go over it constantly. Several witnesses testified to the same facts—one of them saying that it was the duty of Burton to repair the poles, and, "when there were rotten cross-arms, to put new ones up."

John Totten testified that he was with Catlett when he was killed; that it was a fair morning—there was nothing to prevent Burton from seeing the men —that Catlett was 8 feet from the track, open space, straight track, thinks that Burton could have seen him for 300 yards. Witness had worked on the section three or four years, regular work, every day.

Defendant introduced the engineer in charge of the engine on the day of the accident, who swore that the place at which it occurred was at the end of a curve and cut; that the cut would break the view of a man standing back the distance described by the plaintiff's witnesses; that he saw the section hands as he passed them; they were regular workers on the track, always waved hand at them. There was other evidence tending to show that Burton could not see the deceased from the car door. The evidence showed that the train was running from 35 to 50 miles an hour. At the conclusion of the testimony, defendant requested his honor to direct a verdict because, "taking the testimony on the part of the plaintiff to be true, with all legal and reasonable inferences to be drawn therefrom, it does not warrant a verdict for plaintiff." To the refusal to so instruct the jury defendant duly excepted. Defendant requested his honor to direct a verdict for that "there was a material variance between the allegations and proof and duly excepted to his refusal to do so." His honor explained to the jury the issues involved, defining negligence, and, in regard to the law of the case, said: "The court charges you, therefore, gentlemen, in connection with this first issue, that if the evidence satisfies the jury that Burton, as a lineman of the defendant, was required, as one of the duties of his employment, to travel on a railroad train and throw material off for use in repairing or maintaining the telegraph line, and that he was engaged in his work at the time intestate of plaintiff was killed, and that in the discharge of his employment he threw from the door of a baggage car attached to a train moving at a rate of speed of from 35 to 50 miles an hour a heavy piece of timber composed of two telegraph arms nailed together, being two pieces of scantling about 8 feet long, which struck and killed intestate, and that the said Burton threw the said piece of scantling where persons were, or where they had the right to be, that such is negligence per se, and constitutes negligence for which the company is liable; and in this connection the court instructs the jury further that the intestate, being section foreman upon this particular section of the railway, had a right to be where he was when the scantling struck him; that he had performed the duty which devolved upon him by law; that, when he heard the train approaching, had removed himself, and caused his employés to remove themselves far enough from the railway track to permit the train to pass in safety to all concerned. Now, gentlemen, if you find the facts to be—that is, by the preponderance of the testimony—that Burton was the agent of the company and its lineman, and was traveling in this

car, carrying this piece of timber, in the discharge of the duties of his employment, and that he threw this piece of timber out of that car door, when the car was running at from 35 to 50 miles an hour, and the intestate being there near the railroad, where he had a right to be, that as to him that act on the part of Burton was negligence for which the telegraph company is liable in damages."

There was a verdict for plaintiff, assessing her damages at $5,000. Defendant duly excepted to the instructions given by his honor, assigned error as set out in the record, and appealed.

W. M. Hendren (Manly & Hendren and George H. Fearons, on the brief), for plaintiff in error.

C. B. Watson (Watson, Buxton & Watson, on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and BRAWLEY and CONNOR, District Judges.

CONNOR, District Judge (after stating the facts as above). Defendant's first exception is directed to the refusal of his honor to insert in the issue the words "wantonly, carelessly, and cruelly," used in the fourth paragraph of the complaint. The contention is based upon the proposition that plaintiff has "alleged one cause of action and proven another." The vice in this proposition lies in the failure to note the distinction between the allegations upon which the cause of action is founded and those allegations which are material only as affecting the character and quantum of damages. The actionable facts alleged are that defendant's servant, by a negligent act, or an act done in a negligent manner, caused the death of plaintiff's intestate. It is entirely immaterial, for the purpose of establishing a cause of action under the provisions of Lord Campbell's act (Revisal N. C. § 59), whether the act was wanton or cruel. "Facts showing a legal duty and the neglect thereof on the part of defendant, with a resulting injury to the plaintiff, are sufficient to constitute a cause of action." 29 Cyc. 565. While the law imposes different degrees of care, based upon the relations existing between the parties, it adjudges that any injury resulting from a failure to observe such degree of care constitutes actionable negligence. The degree of negligence, if it be possible to define it, is of no import in fixing the liability. It may be of importance in fixing the character and quantum of damages to be awarded. A very accurate author, writing on the law of negligence, says:

"There is no matter within the range of jurisprudence that has been the subject of more troublesome controversies than the determination of the existence of the degrees of negligence." 1 Bevin, Neg. 19; The New World v. King, 57 U. S. 469, 14 L. Ed. 1019.

Baron Rolfe, in Wilson v. Brett, 11 M. & W. 113, well says:

"That he can see no difference between negligence and gross negligence; that it is the same thing, with the addition of a vituperative epithet."

Defendant calls our attention to authorities which hold that, when the plaintiff alleges that the act complained of has been willful, evidence showing such act to have been merely negligent constitutes a fatal variance. 29 Cyc. 588. The learned counsel insists that the

language of the complaint, in effect, charges that Burton's conduct was willful. We do not so interpret it. "Willful" imports a much more positive affirmative mental condition prompting the act than wanton. Many judges hold, and with much reason, that "willful negligence" is a contradiction, an anomaly. "It has been generally held that willful injury is not charged by an allegation that the act was committed recklessly, wantonly, or purposely, wrongfully or unlawfully." 29 Cyc. 574. Nor is a charge of gross negligence equivalent to an allegation of a willful act. McAdoo v. Railroad, 105 N. C. 140, 11 S. E. 316. When it is sought to hold a master liable for the act of the servant, it is sometimes material to inquire whether the act complained of emanated from the willful or malicious state of mind of the servant. In recent times, however, the master has been held liable for the willful misconduct of his servant if in the scope of his employment (Pollock on Torts [7th Ed.] 91), abandoning the doctrine of McManus v. Crickett, 1 East. 105, and the long line of decisions based upon that case (Jaggard on Torts, 39; Sawyer v. Railroad, 144 N. C. 873, 56 S. E. 1039; Stewart v. Lumber Co., 146 N. C. 47, 59 S. E. 545). In this case the degree of negligence attributable to Burton is, in no possible point of view, material, because by the statute giving a right of action, the damages to be recovered are confined to "a fair and just compensation for the pecuniary injury resulting from the death of intestate." Revisal, § 60. No punitive or exemplary damages can be recovered. The exceptions based upon his honor's ruling as to the form of the issue and the supposed variance cannot be sustained. Did his honor correctly instruct the jury that, if they found the condition summarized by him, defendant's servant was guilty of negligence as matter of law?

It is uniformly held, and may be treated as the settled practice, in both state and federal courts, that:

"When a given state of facts are such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only when the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is considered as one of law for the court." Grand Trunk Ry. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; Texas & Pac. Ry. v. Gentry, 163 U. S. 353, 16 Sup. Ct. 1104, 41 L. Ed. 186.

"Questions of negligence do not become questions of law for the court, except where the facts are such that all reasonable men must draw the same conclusion from them." Kreigh v. Westinghouse Co., 214 U. S. 249, 29 Sup. Ct. 619, 53 L. Ed. 984; Haltom v. Railroad, 127 N. C. 255, 37 S. E. 262.

His honor, by grouping certain phases of the testimony in regard to which there was no contradiction, and eliminating all such as were controverted, said to the jury that, if they found such facts, the law imputed negligence to Burton in throwing the cross-arm from the car. He assumed, because admitted in the pleadings: That plaintiff's intestate was at the time he was killed in the discharge of his duty and where he had a right to be. He was not a trespasser, nor a mere licensee, but an employé of the road. He exercised due care, upon the approach of the train, by stepping from five to eight feet from the track, leaving not only room for the train to pass in safety, but for Burton to drop the cross-arm on the side of the track at a safe distance

from the cars. That the train was moving at the rate of 35 to 50 miles an hour. That Burton was the lineman of defendant, and that it was his duty to throw off at certain points along the track cross-arms to be used by defendant company. It was in evidence, without contradiction, that intestate and his hands for some considerable time were employed each day at the point where the injury was inflicted. The engineer, defendant's witness, said that he saw them daily. It does not appear how long Burton had been employed as lineman on the section of the road upon which intestate worked. In view of his honor's instruction, we must eliminate the testimony tending to show that Burton either saw or could by a proper lookout have seen intestate at the time of, or immediately prior to, throwing the cross-arm; these questions being controverted and the evidence being either contradictory or capable of more than one reasonable inference. We are thus confronted with the question whether, in view of the conditions admitted by the pleadings, and found by the jury, under the instructions, it was per se negligent on the part of Burton to throw the crossbar from the open door of the baggage car at the point and under the conditions shown to exist. The instruction is not open to the criticism made by the learned counsel for defendant. His honor did not hold that:

"It is negligence as a matter of law for a person to throw from a moving train, in the open country, any object likely to do harm, without regard to where the train is, or whether persons are actually near the railroad, or likely to be near."

No such question was involved in the record, nor presented by the evidence. Courts deal with concrete cases, and not with academic discussions. His honor said that if certain averments, sustained by testimony, were found to be true, they established negligence as a matter of law. It cannot be doubted that Burton owed the duty to exercise reasonable care, or that degree of care which a reasonably prudent man under the same or similar circumstances would exercise to avoid injuring any person rightfully on, or near to, the track. The standard of duty is thus laid down by the Supreme Court:

"Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such person under the existing circumstances would not have done. The essence of the fault may lie in omission or commission. The duty is dictated and measured by the exigencies of the occasion." Railroad Co. v. Jones, 95 U. S. 439, 24 L. Ed. 506.

Since the decision of Russell v. Railroad, 118 N. C. 1098, 24 S. ... 512, this standard of duty has obtained in the courts of North Carolina —sometimes called the rule of the "ideal prudent man." "Legal negligence is the absence of that degree of care which the law requires a man to exercise under the peculiar circumstances in which he may be placed for the time being, or the party charged with the injury must act like a man of ordinary prudence would under similar circumstances." Brinkley v. Railroad, 126 N. C. 88, 35 S. E. 238.

We concur with his honor that, applying this standard to Burton's conduct, he was guilty of negligence. To throw from a rapidly moving train without looking, or without being able, to see whether a per-

son whose duty it was to be somewhere along a section of six miles of the track and who was daily at some such point, two pieces of timber 8 feet long and weighing 25 pounds, nailed across each other with sufficient force to project it from 5 to 8 feet beyond the track and crush the body, break the neck of a human being, is, to put it mildly, negligent, without due care, and in disregard to a plain duty. It is inconceivable that the "ideal prudent man" under like circumstances could act with such disregard of consequences. Conceding that it was lawful and proper for him to drop the cross-arm at or near to the side of the track, certainly it was not necessary to accomplish that end to throw it with such force as to make it a deadly missile. It is not unreasonable to infer that Burton was familiar with the track, that he had passed over it before in the discharge of his duty. He certainly knew that at the point at which he threw the cross-arm there was a necessity for it; that the one then in use was to be replaced. It is a reasonable inference that he had recently been there. However this may be, it was his duty to exercise a reasonable degree of care to avoid injuring persons whose duty called them to be near to the track. Assuming that, either by reason of the curve, the cut, the "lay of the land," or the rapidity of the train, he could not see that intestate was near the track, these conditions should have made him more careful to avoid giving the cross-bar such momentum as to endanger human life. A man may not discharge a deadly weapon into a dark space, where people have a right to be, and avoid the consequences of his act by saying that, by reason of the darkness, he could not see the victim of his negligent conduct. The conditions by which he was surrounded imposed a higher degree of care to avoid injuring another by his conduct. If he saw the injured person and shot, he would be guilty of murder. If he could have seen him by the exercise of reasonable care and failed to do so, and shot, he would be guilty of manslaughter. If he could not see, but knew that persons were probably there, had duties which called them to be there, he would be guilty at the least of negligence.

Mr. Justice Moody in Atchison, etc., R. R. v. Calhoun, 213 U. S. 1, 29 Sup. Ct. 321, 53 L. Ed. 671, quotes with approval the language of Sir Frederick Pollock:

"The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely probable. He will order his precaution by the measure of what appears likely in the known course of things." Pollock on Torts (8th Ed.) 41.

In applying this language to the facts in that case, the learned justice says:

"In judging of the defendant's conduct, attention must be paid to the place where the truck was left. If it had been where the passengers were at all likely to get on or off the train and a passenger stumbled over it to his hurt, there could be no doubt of the liability of the railroad."

So, in the case before us, if the point at which the cross-arm was thrown was one at which no employé was "at all likely" to be, the duty of prevision would not as a matter of law be imposed. It would be

at least a question for the jury, but it is established beyond question, and we know as of common knowledge that on our great trunk lines of railroads common prudence, if not positive law, requires the section hands to be constantly passing over and frequently working upon each section of the track. It would be trifling with the court to say that a lineman of defendant company, whose duty it was to pass over the road frequently, did not know this condition. It would be to impute to defendant negligence in the selection of its servant to suggest that it employed a lineman, who was not reasonably familiar with this condition. Viewed from any possible point of view, Burton was negligent in the manner in which he threw the cross-arm from the moving car.

Defendant strongly urges upon us the argument that he could not reasonably have anticipated that intestate would be at the place at which he threw the cross-arm. This is not the test of liability for the result of a negligent act. If the character of the act is doubtful, the question of reasonable apprehension enters into the problem of liability for a neglect of the duty of prevision; but, if the conditions are such as to impose the duty in respect to the public, it is of no moment whether the negligent actor could have reasonably anticipated the presence of the person injured at the time and place. This element of actionable negligence has sometimes been obscured by failing to keep this distinction in view. In Smith v. London L. W. Ry. Co., L. R., 6 C. P. 21, Blackburn, J., said:

"What the defendants might reasonably anticipate is only material with reference to the question whether the defendants were negligent or not and cannot alter their liability if they were guilty of negligence. If the negligence were once established, it would be no answer that it did much more damage than was expected. If a man fires a gun across the road, where he may reasonably anticipate that persons will be passing, he is guilty of negligence and liable for the injury he has caused; but, if he fires in his own wood, where he cannot reasonably anticipate that any one will be, he is not liable to any one whom he shoots, which shows that what a person may reasonably anticipate is important in considering whether he has been negligent."

Mr. Bevin, after a careful review of the authorities, says:

"When negligence is once shown to exist, it carries a liability for the consequences arising from it, whether they be greater or less, until the intervention of some diverting force, or until the force put in motion by the negligence has itself become exhausted." 1 Neg. 88.

"A tort feasor is liable for all injuries resulting directly from his wrongful act, whether they could or could not have been seen by him. * * * The real question in these cases is: Did the wrongful conduct produce the injury complained of, and not whether the party committing the act could have anticipated the result." Hale on Damages, 36–8; Ramsbottom v. Railroad, 138 N. C. 38, 50 S. E. 448; Johnson v. Railroad, 140 N. C. 574, 53 S. E. 362.

The presence of the deceased at the point where the cross-arm was thrown did not affect the legal quality or character of the act. The other conditions made the act wrongful. The impact between the cross-arm and the body of the deceased gave to him a cause of action, and his death, from such impact, by virtue of the statute, gave to plaintiff a cause of action, with the right to recover such damages as ensued from his death. We have examined Fletcher v. B. & O. R. R.,

168 U. S. 135, 18 Sup. Ct. 35, 42 L. Ed. 411. Nothing said in that case conflicts with the ruling of his honor or our conclusion. There the court below passed judgment of nonsuit, and the sole question was whether there was any evidence sufficient to carry the case to the jury. No other question was raised by the exception. There were a number of controverted questions of fact upon the finding of which the liability of defendant depended. Here the sole question was one of law upon practically conceded facts.

Upon a careful examination of the entire record we find no reversible error.

The judgment must be affirmed.